Robert Lewis **ROBINSON**, Jr., Plaintiff-Appellee,

v.

**CITY OF FAIRFIELD,** Defendant-Appellant.

No. 84-7297

Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Jan. 21, 1985.

Edward Still, Birmingham, Ala., for defendant-appellant.

Robert L. Wiggins, Jr., Birmingham, Ala., for plaintiff-appellee.

Before RONEY, FAY and JOHNSON, Circuit Judges.

PER CURIAM:

The City of Fairfield appeals from a judgment of the United States District Court for the Northern District of Alabama in favor of a black employee who brought this action alleging discrimination on the basis of race with respect to the terms and conditions of his employment with the city and his discharge from that employment. The city raises two issues on appeal: (1) whether the district court erred in finding that the plaintiff brought this action within ninety days after receiving notice of his right to sue from the United States Department of Justice as required under Section 706(f) of the Civil Rights Act, 42 U.S.C.A. § 2000e–5(f)(1), and (2) whether the district court abused its discretion in fashioning a remedy by compensating the plaintiff based upon a comparison with a white em-

ployee who was hired on the same day as the plaintiff, but who occupied a higher, classified position of employment. Because the district court's finding that this action was timely commenced is not clearly erroneous and because the court did not abuse its discretion in fashioning a remedy, we affirm the judgment as entered.

## I. FACTS

Ten days after being hired under the CETA program to work in the Engineering and Maintenance Department of the City of Fairfield, the plaintiff was injured while loading refuse into a garbage truck. On the day his doctor permitted him to resume light work, the plaintiff reported to his supervisor and was told to clean the yard around the offices. While he was working in the yard, the supervisor approached and asked if he were able to work on the garbage truck that day. The plaintiff attempted to explain that he was still undergoing pain and was scheduled to see a doctor later in the day, but the supervisor walked away. The plaintiff continued to work in the yard as assigned. Later, the supervisor returned and found the plaintiff talking with another black CETA worker. The supervisor remarked to the plaintiff at that time with a curse and a racial epithet that all you CETA workers "seem to be just alike." The supervisor went to his office, returned a few minutes later, and told the plaintiff, "[W]e don't need you anymore."

The plaintiff received no warnings, reprimands, or other disciplinary notices before being discharged, though it was the policy of the city not to discharge an employee for unsatisfactory work performance without having previously counseled or reprimanded him in writing. The city contended at trial that the plaintiff's work performance had been unsatisfactory. However, no witness, including the plaintiff's supervisors, could recall any part of his work performance that had not been satisfactory.

The plaintiff's job with the city was that of an unclassified laborer. A white CETA employee was hired on the same day as the plaintiff, given on-the-job training as a truck driver, and eventually placed permanently in this classified position. The plaintiff had attained a higher degree of education, had experience driving trucks while in the armed services, and thus was at least as qualified for the truck driver position as was the white employee. The district court found that, but for the discriminatory practice of the city, the plaintiff would have been trained and promoted to the same or equivalent position as the white employee. The court also found that it would have been futile for the plaintiff to apply for a classified position, given the discriminatory practices of the city.[1]

After his employment was terminated, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, which notified him of his right to sue in a letter dated March 4, 1983. The letter informed the plaintiff that his right to sue had to be exercised, if at all, within ninety days of his receiving the notice. The plaintiff then filed with the clerk of the district court an application for appointment of attorney and for authority to commence an action without prepayment of fees, costs, or security. This application was received by the clerk on June 3, 1983,[2] ninety-one days after March 4, 1983. The

---

1. Among these discriminatory practices is the city's maintenance of segregated dressing and lounge facilities for its black and white employees. These facilities differ drastically in the quality of amenities provided. The district court's judgment orders the city to cease this disparate treatment of black and white workers and to provide facilities on a non-segregated basis. We affirm the district court's order in its entirety.

2. The application was not officially filed until June 8, 1983. However, for purposes of determining whether the plaintiff commenced this

Title VII action within the required 90-day period, we look only to the date on which the clerk actually received the application. *See Suarez v. Little Havana Activities,* 721 F.2d 338 (11th Cir. 1983) (Where Title VII complaint was mailed to clerk of court two days before the 90-day limitations period expired, but was not filed until four days later, the court invoked its equitable powers and held that the action was timely commenced, even though the whereabouts of the complaint during the four days was not known.); *Leggett v. Strickland,* 640 F.2d 774 (5th Cir.1981) (Unit B) (State statute of limitations applicable to Section 1983 claims may be

application states that the plaintiff received the right-to-sue letter on March 4, 1983. It also sets forth the nature and factual basis of the plaintiff's claim of discrimination by the city.

On June 6, 1983, the district court issued an order granting the plaintiff authority to commence an action without prepayment of fees, costs, or security, but denying his application for appointment of attorney. Further, the order stated that the plaintiff's "application shall be treated as a complaint under Title VII ... and deemed filed this date,[3] but an amended complaint, complying with the Federal Rules of Civil Procedure and suitable for service of the defendants ... shall be filed with the court within 30 days from the date hereof (unless extended by order of the court), failing which this cause shall be dismissed for want of prosecution." The plaintiff did not file his amended complaint until July 13, 1983, admittedly beyond the thirty-day period allotted in the court's order. The city contends that its being served with the amended complaint was its first notice of the plaintiff's claim of discrimination.

## II. DISCUSSION

### A. The ninety-day limitations period.

The city first challenges the timeliness of the plaintiff's commencement of this action. The district court found that the ac-

tion was timely commenced when the clerk of court received the application on June 3, 1983, even though this was the ninety-first day after the right-to-sue letter had been drafted and presumably posted to the plaintiff.[4] The district court reasoned that, even if the Department of Justice mailed the letter on March 4, 1983, the plaintiff would not have received it before the following day. Assuming he received the right-to-sue letter on March 5, 1983, the plaintiff brought this action on the ninetieth day by delivering his application to the clerk. If the plaintiff did not receive the right-to-sue letter until after March 5, 1983, then he delivered his application to the clerk well within the ninety-day period as required.

The district court's finding is one of fact, and thus it can be set aside only if clearly erroneous. Fed.R.Civ.P. 52(a). A factual finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *see e.g., Baylor v. Jefferson County Board of Education*, 733 F.2d 1527, 1532 (11th Cir.1984); *Lincoln v. Board of Regents of University System of Georgia*, 697 F.2d 928, 940 (11th Cir.1983). Where the evidence supports more than

satisfied if the complaint reaches the actual or constructive possession of the clerk before the limitations period expires, regardless of when it is filed.); *see also Loya v. Desert Sands Unified School District*, 721 F.2d 279 (9th Cir.1983) (Court held that Title VII action was commenced within the required 90-day period where the complaint arrived in the hands of the clerk before the period expired, was rejected as not conforming with the local rules governing paper length, and was re-typed on the proper size paper and returned to the clerk, though not before the period had run.).

3. The order is somewhat ambiguous as to which date is being referenced: the date of the application's receipt by the clerk or the date of the district court's order. Even if deemed filed on June 6, 1983, two days earlier than it was actually filed, the application was nevertheless received within the required 90-day period, *see supra* note 2, and the action was commenced in a timely manner.

4. Apparently neither the district court nor the parties considered whether Rule 6(e) of the Federal Rules of Civil Procedure operated to add three days to the 90-day limitations period. This may have been because of our earlier decision in *Suarez v. Little Havana Activities*, 721 F.2d 338, 340 (11th Cir.1983), rejecting the application of Rule 6(e) in the Title VII context. By contrast, a subsequent Supreme Court decision presumed that a plaintiff received her right-to-sue letter three days after it was issued, citing Rule 6(e). *Baldwin County Welcome Center v. Brown*, —— U.S. ——, —— n. 1, 104 S.Ct. 1723, 1724 n. 1, 80 L.Ed.2d 196, 200 n. 1 (1984). The ruling in *Suarez*, however, is not controlling in the present appeal, since here the evidence more than sufficiently supports the district court's finding that this action was commenced within the required limitations period.

one conclusion and the trial court has decided to weigh it more heavily in favor of one of the litigants, "[s]uch a choice between two permissible views of the weight of the evidence is not 'clearly erroneous.'" *United States v. Yellow Cab Co.,* 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949); *Baylor, supra,* 733 F.2d at 1532.

■ After reviewing the evidence, including the plaintiff's pro se application which states that he received the right-to-sue letter on March 4, 1983, we are not convinced that the district court erred in making this finding. Even the most expeditious method of delivery by our postal service that was available at the time would not have put the right-to-sue letter in the plaintiff's hands before March 5, 1983. The district court examined the only conflicting evidence noted by the city and concluded that the plaintiff's statement in his pro se application was not reliable. We are not persuaded that this choice between conflicting evidence was clearly erroneous.

The city further contests the timeliness of this action based upon the late filing of the plaintiff's amended complaint. This argument, however, is foreclosed by our decision in *Judkins v. Beech Aircraft Corporation,* 745 F.2d 1330 (11th Cir.1984). In our original ruling in *Judkins,* we reversed a district court's dismissal of a Title VII claim where the plaintiff was late in complying with the magistrate's order that he file a complaint within twenty days from the magistrate's denial of his request for appointment of counsel. The basis for this ruling was that the plaintiff's timely filing of his right-to-sue letter and request for appointed counsel satisfied the limitations requirement. *Judkins v. Beech Aircraft Corporation,* 723 F.2d 818 (11th Cir.1984). The basis for this ruling was later rejected by the Supreme Court in *Baldwin County Welcome Center v. Brown,* — U.S. —, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). On the defendant's motion to recall our mandate in *Judkins,* however, we concluded the holding in *Baldwin* was premised upon the requirement that a Title VII plaintiff, like any other plaintiff in federal court, file a complaint satisfying the requirement in Rule 8(a)(2), *i.e.,* "a short and plain statement" of the plaintiff's claim showing his entitlement to relief. Fed.R.Civ.P. 8(a)(2); *see Baldwin,* — U.S. at —, 104 S.Ct. at 1724, 80 L.Ed.2d at 200. We further found that the plaintiff in *Judkins* had set forth in the EEOC "Charge of Discrimination," which he filed along with his right-to-sue letter, the factual basis of his claim of discrimination. Thus he had met the requirements of *Baldwin County. Judkins, supra,* 745 F.2d 1330 at 1332.

■ We similarly hold in the present appeal that the plaintiff has met the requirements of *Baldwin County* by describing the legal nature and factual basis of his claim against the city in his application for appointment of counsel and for authority to commence this action without prepayment of fees, costs, or security.[5] The district court ordered that the application be treated as a complaint, and it more than comprises a short and plain statement of the plaintiff's claim entitling him to relief.[6]

---

5. In the application, the plaintiff describes in his own handwriting the nature of the city's discrimination as follows:

I was fired by the city of Fairfield Street & Road Department on or about June 27th or 28th 1976 while still under the care of a doctor. I don't believe that the city of Fairfield fired anyone during that time for getting hurt on the job wether [sic] black or white. I was to report back to the hospital on 7–1–76. I was told that "I was not needed anymore" due to the fact that I could not do any heavy lifting at that time.

.　　.　　.　　.　　.

In 1976 the city of Fairfield did not employ any blacks in management positions nor did they provide a decent place for us to clean or

wash up. The city of Fairfield Street & Road Department also had to [sic] separate places for blacks and whites to report to on the yard. We had a shack, the whites had a building with heat and phone.

.　　.　　.　　.　　.

I think that the city of Fairfield fired me for no reason at all. I would like my job back with my back pay.

6. The city's argument, then, can only be that the district court abused its discretion in accepting the plaintiff's belated filing of an amended complaint. Even though the order stated that the cause would be dismissed for want of prosecution if the plaintiff did not file the amended complaint within thirty days, we do not agree that the district court abused its discretion in

■ To the city's claim that the plaintiff never served upon it a copy of his application nor was service of the amended complaint made until well beyond the ninety-day period plus the court's thirty-day extension, we respond first with the observation that the Civil Rights Act does not mandate *service* on the defendant within ninety days, but rather merely the bringing of an action within that period. 42 U.S. C.A. § 2000e–5(f)(1). *Baldwin* held that this entails "filing a complaint with the court," *Baldwin,* —— U.S. at ——, 104 S.Ct. at 1724, 80 L.Ed.2d at 201 (Fed.R.Civ.P. 3), which the plaintiff has done.[7] Moreover, in accordance with Rule 4(j) of the Federal Rules of Civil Procedure, the city was served within 120 days after the action was brought. Fed.R.Civ.P. 4(j).

### B. The Remedy.

The city's second challenge is to the district court's use of the white employee hired for the classified position of truck driver as the basis for computing the plaintiff's remedy. We note initially that the plaintiff had more formal education than the white employee and had previous experience driving trucks while in the armed services. Given these facts, we do not perceive as erroneous the district court's finding that, but for the city's discriminatory practices, the plaintiff would have been trained for and promoted to a classified position equivalent to that of truck driver.

The city does not argue that promotions can never be considered in fashioning an appropriate remedy in Title VII cases. Rather, it contends that possible promotions should not be considered where there is no evidence the plaintiff applied for and was denied the promotions. This argument, however, seeks to transform the issue of promotions into a separate claim of discrimination on the part of the city for which the plaintiff cannot recover absent proof that the promotions were denied on the basis of race. The city attempts to bolster this argument by describing the positions of laborer and truck driver as unrelated in terms of established lines of promotion.

■ We decline to accept this argument. The plaintiff did not allege discrimination in the denial of specific promotions. He simply alleged and proved that he was subjected to discriminatory terms and conditions of employment and a discriminatory discharge. Moreover, he convinced the district court that it would have been futile for him to apply for the classified position of truck driver in light of the city's pervasive discriminatory practices. The district court's finding is not clearly erroneous, and its discretionary powers in fashioning a remedy are broad. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 419–22, 95 S.Ct. 2362, 2372–74, 45 L.Ed.2d 280 (1975). Accordingly, we hold that promotions, even if not sought and denied, are a legitimate consideration in Title VII cases for structuring remedies designed to make persons whole for injuries suffered through past discrimination. The district court did not abuse its discretion in awarding the plaintiff damages based upon the salary of a white employee who had been placed in a higher, classified position of employment than the plaintiff occupied when he was discharged.

The judgment of the district court is AFFIRMED.

---

permitting the amendment. Leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

7. In fact, we look to the clerk's *receipt* of the plaintiff's complaint. *See supra* note 2.